## CITY OF MESQUITE *v.* ALADDIN'S CASTLE, INC.

No. 80–1577.   Argued November 10, 1981—Decided February 23, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, REHNQUIST, and O'CONNOR, JJ., joined. WHITE, J., *post*, p. 296, and POWELL, J., *post*, p. 297, filed opinions concurring in part and dissenting in part.

*Elland Archer* argued the cause and filed briefs for appellant.

*Philip W. Tone* argued the cause for appellee. With him on the brief were *Louis P. Bickel, Thomas L. Case, Don R. Sampen,* and *Christopher L. Varner.*\*

JUSTICE STEVENS delivered the opinion of the Court.

The United States Court of Appeals for the Fifth Circuit declared unconstitutional two sections of a licensing ordi-

---

\*Briefs of *amici curiae* urging affirmance were filed by *Lawrence Gunnels, James A. Klenk,* and *Rufus King* for the Amusement Device Manufacturers Association; and by *Philip F. Herrick* for the Amusement and Music Operators Association, Inc.

*Robert H. Bork* and *David E. Springer* filed a brief for Atari, Inc., as *amicus curiae.*

nance governing coin-operated amusement establishments in the city of Mesquite, Texas.[1] Section 6 of Ordinance 1353, which directs the Chief of Police to consider whether a license applicant has any "connections with criminal elements,"[2] was

---

[1] 630 F. 2d 1029 (1980).

[2] Section 6 of Ordinance 1353 of the Code of the city of Mesquite provided in pertinent part:

"Any person desiring to obtain a license for a coin-operated amusement establishment shall apply to the City Secretary by original and five (5) copies, one of which shall be routed to the City Manager, Chief of Police, Chief Building Inspector and City Planner, for review.

"Upon approval by each of the parties and payment of the license fee, the City Secretary shall issue a license for such establishment, which shall be valid for one (1) year and shall be non-transferable.

"The Chief of Police shall make his recommendation based upon his investigation of the applicant's character and conduct as a law abiding person and shall consider past operations, if any, convictions of felonies and crimes involving moral turpitude and connections with criminal elements, taking into consideration the attraction by such establishments of those of tender years.

"The Chief Building Inspector and City Planner shall determine compliance with applicable building and zoning ordinances of the City.

"When the City Manager has received the recommendations from the Chief of Police, Chief Building Inspector and City Planner, he shall review such application together with such recommendations as may be furnished and shall approve such application or disapprove same with written notation of his reasons for disapproval.

"Upon disapproval, the applicant may make such corrections as noted and request approval, request withdrawal and refund of license fee, or give notice of appeal from the City Manager's decision.

"In the event of appeal from the City Manager's decision the applicant shall give written notice of his intention to appeal within ten (10) days of notice of the City Manager's decision. Such appeal shall be heard by the City Council within thirty (30) days from date of such notice unless a later date is agreed upon by applicant.

"Upon appeal to the City Council of the City Manager's decision based upon an adverse recommendation by the Chief of Police as to applicant's character, the applicant shall have the same burden as prescribed in Article 305, V. A. C. S. to show to the Council that he or it is of good character as a law abiding citizen to such extent that a license should be issued.

held to be unconstitutionally vague. Section 5, which prohibits a licensee from allowing children under 17 years of age to operate the amusement devices unless accompanied by a parent or legal guardian,[3] was held to be without a rational basis. The first holding rests solely on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Court of Appeals stated that its second holding rested on two provisions of the Texas Constitution as well as the Fourteenth Amendment to the Federal Constitution. Because Congress has limited our jurisdiction to review questions of state law, and because there is ambiguity in the Court of Appeals' second holding, we conclude that a remand for clarification of that holding is necessary. There is, however, no impediment to our review of the first holding.

On April 5, 1976, to accommodate the proposal of Aladdin's Castle, Inc. (Aladdin), to open an amusement center in a shopping mall, the city exempted from the prohibition against operation of amusement devices by unattended children certain amusement centers, the features of which were defined in terms of Aladdin's rules, as long as children under the age of *seven* were accompanied by an adult.[4] Thereafter, Aladdin entered into a long-term lease and made other arrangements to open a center in the mall. In August, how-

---

"Upon hearing the Council may reverse the decision of the City Manager in whole or in part or may affirm such decision.

"An applicant may appeal such decision to the District Court within thirty (30) days but such appeal shall be upon the substantial evidence rule.

"For violation of any of the requirements of this ordinance the City Manager may upon three (3) days notice of Licensee revoke the license granted hereunder. The same rights of appeal shall exist upon revocation as upon disapproval of the original application." App. to Juris. Statement 9–10.

[3] Section 5 provides:

"It shall be unlawful for any owner, operator or displayer of coin-operated amusement machines to allow any person under the age of seventeen (17) years to play or operate a coin-operated amusement machine unless such minor is accompanied by a parent or legal guardian." *Id.*, at 8.

[4] See Ordinance 1310.

ever, its application for a license was refused because the Chief of Police had concluded that Aladdin's parent corporation was connected with criminal elements. Aladdin then brought suit in a Texas state court and obtained an injunction requiring the city to issue it a license forthwith. The Texas court found that neither Aladdin nor its parent corporation had any connection with criminal elements and that the vagueness in the ordinance contravened both the Texas and the Federal Constitutions.[5]

On February 7, 1977, less than a month after the city had complied with the state-court injunction by issuing the license to Aladdin, the city adopted a new ordinance repealing Aladdin's exemption, thereby reinstating the 17-year age requirement, and defining the term "connections with criminal elements" in some detail.[6] Aladdin then commenced this ac-

---

[5] The judgment of the trial court was affirmed by the Texas Court of Civil Appeals, 559 S. W. 2d 92 (1977), and the Texas Supreme Court refused an application for a writ of error, 570 S. W. 2d 377 (1978), finding no reversible error in the conclusion that the denial of the license was not supported by substantial evidence, but declining to reach the vagueness question.

[6] Section 9 of Ordinance 1353 defined terms used in § 6 of the ordinance (quoted in n. 2, *supra*), which had been reenacted without change. Section 9 provided in pertinent part:

"*Connection With Criminal Elements* is defined as that state of affairs wherein an applicant, or an officer of, principal stockholder of, person having a substantial interest in or management responsibility for, a corporation or other organization wherein such organization is the applicant, directly or as parent, subsidiary or affiliate, has such association, acquaintance, or business association with parties having been convicted of a felony or crime involving moral turpitude or are otherwise involved in unlawful activities, whether convicted or not, to the extent that the fencing of stolen merchandise or illegally obtained funds, the procuring of prostitutes, the transfer or sale of narcotics or illegal substances is made more feasible or likely or the protection of those of tender years from such unwholesome influences are rendered more difficult.

"A determination by the United States Department of Justice that a party is a member of the 'mafia' or 'Cosa Nostro' family or that such party is engaged in or affiliated with a nationwide crime organization, whether for-

tion in the United States District Court for the Northern District of Texas, praying for an injunction against enforcement of the new ordinance. After a trial, the District Court held that the language "connections with criminal elements," even as defined, was unconstitutionally vague, but the District Court upheld the age restriction in the ordinance.[7] As already noted, the Court of Appeals affirmed the former holding and reversed the latter.

Invoking our appellate jurisdiction under 28 U. S. C. § 1254(2), the city now asks us to reverse the judgment of the Court of Appeals. After we noted probable jurisdiction, 451 U. S. 981, Aladdin advised us that the ordinance reviewed by the Court of Appeals had been further amended in December 1977 by eliminating the phrase "connections with criminal elements." The age restriction, however, was retained.[8]

## I

A question of mootness is raised by the revision of the ordinance that became effective while the case was pending in the Court of Appeals. When that court decided that the term "connections with criminal elements" was unconstitutionally vague, that language was no longer a part of the ordinance. Arguably, if the court had been fully advised, it would have regarded the vagueness issue as moot.[9] It is clear to us, however, that it was under no duty to do so.

---

mally or informally, shall be prima facia evidence, so far as the issuance of a license hereunder, that such person has 'connections with criminal elements' and constitute, within the meaning of this ordinance, 'criminal elements'." App. to Juris. Statement 12–13.

[7] 434 F. Supp. 473 (1977), aff'd in part, rev'd and remanded in part, 630 F. 2d 1029 (1980).

[8] See Ordinance 1410, App. to Brief for Appellee A1–A11.

[9] If it becomes apparent that a case has become moot while an appeal is pending, the judgment below normally is vacated with directions to dismiss the complaint. See *United States* v. *Munsingwear, Inc.*, 340 U. S. 36.

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.[10]   In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.[11]   The city followed that course with respect to the age restriction, which was first reduced for Aladdin from 17 to 7 and then, in obvious response to the state court's judgment, the exemption was eliminated.   There is no certainty that a similar course would not be pursued if its most recent amendment were effective to defeat federal jurisdiction. We therefore must confront the merits of the vagueness holding.

"It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *Grayned* v. *City of Rockford,* 408 U. S. 104, 108 (emphasis

---

[10] "The test for mootness in cases such as this is a stringent one.   Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' *United States* v. *W. T. Grant Co.,* 345 U. S. 629, 632 (1953); see, *e. g., United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 290 (1897).   A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . Of course it is still open to appellees to show, on remand, that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary.   [345 U. S.] at 633–636.   This is a matter for the trial judge.   But this case is not technically moot, an appeal has been properly taken, and we have no choice but to decide it." *United States* v. *Concentrated Phosphate Export Assn.,* 393 U. S. 199, 203–204.

[11] Indeed, the city has announced just such an intention.   See Tr. of Oral Arg. 18–20.

added).[12] We may assume that the definition of "connections with criminal elements" in the city's ordinance is so vague that a defendant could not be convicted of the offense of having such a connection; we may even assume, without deciding, that such a standard is also too vague to support the denial of an application for a license to operate an amusement center. These assumptions are not sufficient, however, to support a holding that this ordinance is invalid.

After receiving recommendations from the Chief of Police, the Chief Building Inspector, and the City Planner, the City Manager decides whether to approve the application for a license; if he disapproves, he must note his reasons in writing. The applicant may appeal to the City Council. If the City Manager disapproved the application because of the Chief of Police's adverse recommendation as to the applicant's character, then the applicant must show to the City Council that "he or it is of good character as a law abiding citizen," which is defined in the ordinance to "mean substantially that standard employed by the Supreme Court of the State of Texas in the

---

[12] The Court of Appeals summarized the relevant authorities as follows:

"A law is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application . . . .' *Smith* v. *Goguen*, 415 U. S. 566, 572 n. 8, quoting *Connally* v. *General Construction Co.*, 269 U. S. 385, 391. *See generally* Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67 (1960). The offense to due process lies in both the nature and consequences of vagueness. First, vague laws do not give individuals fair notice of the conduct proscribed. *Papachristou* v. *City of Jacksonville*, 405 U. S. 156, 162. *Accord Grayned* v. *City of Rockford*, 408 U. S. 104, 108 & n. 3. Second, vague laws do not limit the exercise of discretion by law enforcement officials; thus they engender the possiblity of arbitrary and discriminatory enforcement. *Grayned* v. *City of Rockford*, 408 U. S. at 108–09 & n. 4; *Papachristou* v. *City of Jacksonville*, 405 U. S. at 168–70. Third, vague laws defeat the intrinsic promise of, and frustrate the essence of, a constitutional regime. We remain 'a government of laws, and not of men,' *Marbury* v. *Madison*, 5 U. S. (1 Cranch.) 137, 163, only so long as our laws remain clear." 630 F. 2d, at 1037 (citations abbreviated).

licensing of attorneys as set forth in [the Texas statutes]."
§ 9 of Ordinance 1353, App. to Juris. Statement 13.    An applicant may further appeal to the state district court.    It is clear from this summary[13] that the phrase "connections with criminal elements," as used in this ordinance, is not the standard for approval or disapproval of the application.

The applicant's possible connection with criminal elements is merely a subject that the ordinance directs the Chief of Police to investigate before he makes a recommendation to the City Manager either to grant or to deny a pending application.    The Federal Constitution does not preclude a city from giving vague or ambiguous directions to officials who are authorized to make investigations and recommendations. There would be no constitutional objection to an ordinance that merely required an administrative official to review "all relevant information" or "to make such investigation as he deems appropriate" before formulating a recommendation. The judgment of the Court of Appeals was therefore incorrect insofar as it held that the directive to the Chief of Police is unconstitutionally vague.

## II

The Court of Appeals stated that its conclusion that the age requirement in the ordinance is invalid rested on its interpretation of the Texas Constitution as well as the Federal Constitution:

> "We hold that the seventeen year old age requirement violates both the United States and Texas constitutional guarantees of due process of law, and that the application of this age requirement to coin-operated amusement centers violates the federal and Texas constitutional guarantees of equal protection of the law."    630 F. 2d 1029, 1038–1039 (1980) (footnotes omitted).

---

[13] The ordinance is quoted in pertinent part in n. 2, *supra*.

In the omitted footnotes the court quoted two provisions of the Texas Constitution that are similar, but by no means identical, to parts of the Federal Constitution.[14]

Because our jurisdiction of this appeal is based on 28 U. S. C. § 1254(2), we are precluded from reviewing the Court of Appeals' interpretation of the Texas Constitution. For the federal statute provides:

> "Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:
>
> .        .        .        .        .
>
> "(2) By appeal by a party relying on a State statute held by a court of appeals to be invalid as repugnant to the Constitution, treaties or laws of the United States, but such appeal shall preclude review by writ of certiorari at the instance of such appellant, and the review on appeal shall be restricted to the Federal questions presented . . . ."

If the Texas Constitution provides an independent ground for the Court of Appeals' judgment, our possible disagreement with its exposition of federal law would not provide a sufficient basis for reversing its judgment. If that be so, we should simply dismiss the appeal insofar as the city seeks review of the invalidation of the age requirement. Cf. *United States* v. *Hastings*, 296 U. S. 188, 193.[15]

The city contends, however, that the Court of Appeals did not place independent reliance on Texas law but merely

---

[14] Article 1, § 19, of the Texas Constitution provides:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Article 1, § 3, of the Texas Constitution provides in pertinent part:

"All free men, when they form a social compact, have equal rights . . . ."

[15] "Review of a judgment which we cannot disturb, because it rests adequately upon a basis not subject to our examination, would be an anomaly."

treated the Texas constitutional protections as congruent with the corresponding federal provisions.[16]   Under this reading of the Court of Appeals' opinion, our correction of any federal error automatically would result in a revision of the Court of Appeals' interpretation of the Texas Constitution.   Instead of providing independent support for the judgment below, the Texas law, as understood by the Court of Appeals, would be dependent on our reading of federal law. Although the city's contention derives support from the Court of Appeals' greater reliance on federal precedents than on Texas cases, we nevertheless decline, for the reasons that follow, to decide the federal constitutional question now.

It is first noteworthy that the language of the Texas constitutional provision is different from, and arguably significantly broader than, the language of the corresponding federal provisions.   As a number of recent State Supreme Court decisions demonstrate, a state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by this Court in favor of a different analysis of its corresponding constitutional guarantee.   See generally Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977), and cases cited therein. Because learned members of the Texas Bar sit on the Court of Appeals for the Fifth Circuit, and because that court confronts questions of Texas law in the regular course of its judicial business, that court is in a better position than are we to recognize any special nuances of state law.   The fact that the Court of Appeals cited only four Texas cases is an insufficient

---

[16] If this contention is correct, we may review the Court of Appeals' interpretation of federal law.   Cf. *Zacchini* v. *Scripps-Howard Broadcasting Co.*, 433 U. S. 562, 568; *Mental Hygiene Dept.* v. *Kirchner*, 380 U. S. 194, 198; *Missouri ex rel. Southern R. Co.* v. *Mayfield*, 340 U. S. 1, 5; *Minnesota* v. *National Tea Co.*, 309 U. S. 551, 554–555; *State Tax Comm'n* v. *Van Cott*, 306 U. S. 511, 514.

basis for concluding that it did not make an independent analysis of Texas law.

Second, it is important to take note of the Court of Appeals' interpretation of the Texas "requirement of legislative rationality." That interpretation seems to adopt a standard requiring that a legislative classification rests " ' "upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ." ' " 630 F. 2d, at 1039.[17] This formulation is derived from this Court's opinion in *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415. But it is unclear whether this Court would apply the *Royster Guano* standard to the present case. See *United States Railroad Retirement Bd.* v. *Fritz,* 449 U. S. 166; *Craig* v. *Boren,* 429 U. S. 190. Therefore, it is surely not evident that the Texas standard and the federal standard are congruent.

Finally, and of greater importance, is this Court's policy of avoiding the unnecessary adjudication of federal constitutional questions. As we recently have noted, see *Minnick* v. *California Dept. of Corrections,* 452 U. S. 105, this self-imposed limitation on the exercise of this Court's jurisdiction has an importance to the institution that transcends the significance of particular controversies. No reason for hasty decision of the constitutional question presented by this case has been advanced. If Texas law provides independent sup-

---

[17] In a section of its opinion entitled "Rational Basis," the Court of Appeals twice set forth a rational-basis test. See 630 F. 2d, at 1039. In the first paragraph, the court stated that "[t]he test requires that legislative action be rationally related to the accomplishment of a legitimate state purpose," and cited both federal and state decisions in support of that formulation. In the second paragraph, the court stated that "[t]he test requires that legislation constitute a means that is 'reasonable, not arbitrary and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ," ' " quoting from a decision of the Texas Supreme Court, *Texas Woman's University* v. *Chayklintaste,* 530 S. W. 2d 927, 928 (1975), which in turn quoted from *Reed* v. *Reed,* 404 U. S. 71, 76. A number of this Court's decisions were cited as in accord with this formulation. Although we cannot be sure, we might reasonably infer that the second formulation of the test represents the Court of Appeals' interpretation of Texas law.

port for the Court of Appeals' judgment, there is no need for decision of the federal issue.[18]   On the other hand, if the city is correct in suggesting that the Court of Appeals' interpretation of state law is dependent on its federal analysis, that court can so advise us and we can then discharge our responsibilities free of concern that we may be unnecessarily reaching out to decide a novel constitutional question.[19]

The judgment of the Court of Appeals is reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[18] Our dissenting Brethren suggest that our "view allows federal courts overruling state statutes to avoid appellate review here simply by adding citations to state cases when applying federal law," *post,* at 300 (POW- ELL, J., concurring in part and dissenting in part).   We are unwilling to assume that any federal judge would discharge his judicial responsibilities in that fashion.   In any event, in this case we merely hold that the Court of Appeals must explain the basis for its conclusion, if there be one, that the state ground is adequate and independent of the federal ground.

[19] Cf. *Mental Hygiene Dept.* v. *Kirchner, supra,* at 196–197 (footnotes omitted):

"The California Supreme Court did not state whether its holding was based on the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States or the equivalent provisions of the California Constitution, or both.   While we might speculate from the choice of words used in the opinion, and the authorities cited by the court, which provision was the basis for the judgment of the state court, we are unable to say with any degree of certainty that the judgment of the California Supreme Court was not based on an adequate and independent nonfederal ground.   This Court is always wary of assuming jurisdiction of a case from a state court unless it is plain that a federal question is necessarily presented, and the party seeking review here must show that we have jurisdiction of the case.   Were we to assume that the federal question was the basis for the decision below, it is clear that the California Supreme Court, either on remand or in another case presenting the same issues, could inform us that its opinion was in fact based, at least in part, on the California Constitution, thus leaving the result untouched by whatever conclusions this Court might have reached on the merits of the federal question.   For reasons that follow we conclude that further clarifying proceedings in the California Supreme Court are called for under the principles stated in *Minnesota* v. *National Tea Co.,* 309 U. S. 551."

JUSTICE WHITE, concurring in part and dissenting in part.

I concur in the Court's holding that Mesquite's ordinance directing the Chief of Police to consider whether a license applicant has any "connections with criminal elements" is not void for vagueness.*

Like JUSTICE POWELL, however, I dissent from the Court's remand of the challenge to the age requirements in §5 of the Mesquite ordinance. The sentiment to avoid unnecessary constitutional decisions is wise, but there is no reason in this case to suspect that the Fifth Circuit's standard for evaluating appellee's due process and equal protection claims under the Texas Constitution differed in any respect from federal constitutional standards. I agree with JUSTICE POWELL that "the inclusion of three cursory state-law citations in a full discussion of federal law by a federal court is neither a reference to nor an adoption of an *independent* state ground." *Post*, at 299–300 (concurring in part and dissenting in part).

I refrain from joining JUSTICE POWELL's detailed discussion in support of this position only because I would prefer not to engage in debate over the present health of "the *Roys-*

---

*I agree that this issue has not been mooted by the city's revision of the ordinance. This conclusion is not inconsistent with our recent disposition of *Princeton University* v. *Schmid, ante,* p. 100 *(per curiam).* In that case, Princeton University's regulations governing solicitation and similar activity on University property were held invalid by the New Jersey Supreme Court. While the case was pending before the New Jersey court, Princeton substantially amended the contested regulations. On appeal to this Court, we held that the validity of the old regulations had become a moot issue. Unlike the city of Mesquite, Princeton gave no indication that it desired to return to the original regulatory scheme and would do so absent a judicial barrier. In this case, as noted in the Court's opinion, Mesquite "has announced just such an intention." *Ante,* at 289, n. 11. Because the test of whether the cessation of allegedly illegal action moots a case requires that we evaluate the likelihood that the challenged action will recur, *County of Los Angeles* v. *Davis,* 440 U. S. 625 (1979), it is on this basis that our disposition of the two cases is consistent.

*ter Guano* standard." As I understand it, and as expressed in the opinion of the Court, *ante,* at 292 and 294, the rationale for inquiring into the presence of independent and adequate state grounds is to avoid an unnecessary "abstract opinion," *United States* v. *Hastings,* 296 U. S. 188, 193 (1935), and to refrain from "unnecessary adjudication of federal constitutional questions." *Ante,* at 294. This is the sole justification for remanding the case to the Court of Appeals. To justify that disposition, however, the Court finds it necessary to speculate as to whether a formulation of the rational-basis test initially stated in *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415 (1920), and reiterated in *Reed* v. *Reed,* 404 U. S. 71, 76 (1971), remains good law in light of more recent decisions. *Ante,* at 294. JUSTICE POWELL, in response, declares that "[t]his Court has never rejected either *Royster Guano* or *Reed* v. *Reed.*" *Post,* at 301, n. 6.

I fear that we have lost sight of the fact that our reason for pursuing this inquiry is to avoid rendering advisory opinions on federal constitutional law. It is ironic that in seeking to skirt a relatively narrow issue of whether the Mesquite age requirement is constitutional, an issue decided by the Court of Appeals and fully briefed, the Court has instead entered into highly abstract, totally advisory, speculation as to the continuing validity of one of our earlier statements on a matter of no small constitutional importance. If it is necessary to interpret a case twice removed and totally unrelated to the matter before us in order to justify·a remand to the Court of Appeals, I would think it clear that no independent nonfederal basis for the decision is present. *Delaware* v. *Prouse,* 440 U. S. 648, 652 (1979).

JUSTICE POWELL, concurring in part and dissenting in part.

I concur in the Court's holding that Mesquite Ordinance 1353, § 6, is not void for vagueness. I dissent, however, from the Court's remand of the challenge to § 5.

## I

The jurisdictional basis for the Court's review of this case is 28 U. S. C. § 1254(2), which provides for mandatory Supreme Court review of federal appellate decisions overturning state statutes on federal constitutional grounds. Rather than exercising this jurisdiction, the Court remands the case to the Court of Appeals to clarify whether its decision is based on Texas law. In the past, the Court has not automatically required clarification when the record reveals that the lower court's decisional basis is federal law. In this case, the opinion of the Court of Appeals contains no analysis of state law independent of its clear application of federal law. In my view there is no justification for a remand.

The city of Mesquite, Tex., adopted an ordinance stating that owners of coin-operated pinball machines should not allow their operation by youths under the age of 17 years. In the decision below, the Court of Appeals held that this ordinance violated equal protection and due process as well as First Amendment rights of free speech and association. The court's opinion referred to the Texas Constitution's Due Process and Equal Protection Clauses,[1] and quoted the relevant Texas constitutional provisions in the margin.[2] The court then, at some length, applied the Fourteenth Amendment's rational-relationship test to the Mesquite ordinance, citing, quoting, and discussing a total of 18 federal cases in this analysis. In the two initial paragraphs defining the

---

[1] 630 F. 2d 1029, 1038–1039 (CA5 1980):

"We hold that the seventeen year old age requirement violates both the United States and Texas constitutional guarantees of due process of law, and that the application of this age requirement to coin-operated amusement centers violates the federal and Texas constitutional guarantees of equal protection of the law" (footnotes omitted).

[2] Tex. Const., Art. I, § 3 ("All free men, when they form a social compact, have equal rights . . .") and § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land").

broad principles applied in that analysis, the court cited two Texas cases and quoted briefly from another. 630 F. 2d 1029, 1035 (CA5 1980).

These Texas cases do not suggest an adequate and independent state ground for overruling the Mesquite ordinance. In the quoted case, the Texas court was describing *federal*, not Texas, law. *Texas Woman's University* v. *Chayklin-taste*, 530 S. W. 2d 927, 928 (Tex. 1975) (citing *Reed* v. *Reed*, 404 U. S. 71, 76 (1971)). Of the two other Texas cases cited, one involves an unsuccessful challenge to a zoning ordinance, and in it the Supreme Court of Texas applied the rule that a challenger to a zoning ordinance bears a heavy burden of showing that the exercise of police power is not lawful. *City of University Park* v. *Benners*, 485 S. W. 2d 773, 778–779 (1972). This case actually supports the validity of the Mesquite ordinance under Texas law.

In the other case, *Falfurrias Creamery Co.* v. *City of Laredo*, 276 S. W. 2d 351 (Tex. Civ. App. 1955), the State had established an inspection program for dairies. One municipality then passed an ordinance under which milk could be sold within its borders only if inspected by a local inspector. The Texas Court of Civil Appeals concluded that this requirement was arbitrary, since the local inspector could easily determine whether other inspectors were "[making] inspect[ions] in accordance with the standard ordinance contemplated by the State law." *Id.*, at 355. This single case dealing with a dairy-inspection requirement designed to favor local dairies cannot be the basis for a serious allegation that Texas law would not allow Mesquite to exercise its police power by keeping youths out of pinball parlors.

On the basis of an inference as weak as that afforded by *Falfurrias Creamery*, I would not remand to any court, state or federal. But even if the cited case law provided some support for appellee's challenge, the inclusion of three cursory state-law citations in a full discussion of federal law by a fed-

eral court is neither a reference to nor an adoption of an *independent* state ground. The Court's view allows federal courts overruling state statutes to avoid appellate review here simply by adding citations to state cases when applying federal law.

Nor is the Court's rigid approach today required by earlier decisions. In *Konigsberg* v. *State Bar of California,* 353 U. S. 252, 256–258 (1957), for example, California argued that the California Supreme Court's order dismissing the petitioner's prayer for relief was based on an independent and adequate state ground: the requirements of a state procedural rule. The Court nevertheless proceeded to the merits of the federal question without remanding for clarification of the dismissal order's basis. This Court found the proffered sources of the alleged state procedural rule unconvincing and "conclu[ded] that the constitutional issues are before us and we must consider them." *Id.,* at 258 (footnote omitted).[3]

---

[3] See also *Delaware* v. *Prouse,* 440 U. S. 648 (1979) (reaching federal issues when interpretation of State Constitution depends on federal law); *Cicenia* v. *Lagay,* 357 U. S. 504, 507, n. 2 (1958) (After looking at record and opinion below, Court concludes that State Supreme Court's dismissal appears to be based on federal ground); *Williams* v. *Kaiser,* 323 U. S. 471 (1945) (The only cited sources for an independent state ground are considered insubstantial by the Court; Court proceeds to merits of federal issue); *New York ex rel. Bryant* v. *Zimmerman,* 278 U. S. 63, 69 (1928) (Given that State Constitution has no Equal Protection Clause, Court concludes that federal law must have been determinative).

In *Herb* v. *Pitcairn,* 324 U. S. 117 (1945), the lower court dismissed complaints with no indication of whether the dismissal was based on state or federal law. The Court continued the cases pending clarification of the lower court's decisional basis. In announcing this outcome, the Court stated that it would not review a judgment of a state court "until the fact that [the decision] does not [rest on an adequate and independent state ground] appears of record." *Id.,* at 128. *Pitcairn* did not, however, adopt the rigid rule the Court apparently adopts today. The Court continued to be willing to look at available record evidence (none was available in *Pitcairn*) to determine whether the decision below was based on an ade-

## II

The Court gives three reasons for remanding. First, it observes that the language of the State Constitution, quoted in n. 2, *supra*, differs from that in the Federal Constitution and Texas may afford broader protection to individual rights than does the Federal Government. The relevant question is not, however, whether state law could be, or even is, different from federal law, but whether the Court of Appeals decided the case before it on state or federal grounds. In deciding this question, the citation of only three[4] state cases is not, of course, determinative. Here, however, the Court of Appeals failed to discuss, explain, describe, or even state Texas law despite extensive discussion of federal law and cases.

The Court's second point is at least imaginative. It focuses on one sentence from *Reed* v. *Reed*, 404 U. S., at 76, quoted in the Texas case of *Texas Woman's University* v. *Chayklintaste*, 530 S. W. 2d, at 928, *ante*, at 294, and n. 17. That sentence reiterated a formulation of rational-basis analysis that was stated in *F. S. Royster Guano Co.* v. *Virginia*, 253 U. S. 412, 415 (1920). The Court today then implies that "the *Royster Guano* standard" may no longer be good law, citing *United States Railroad Retirement Bd.* v. *Fritz*, 449 U. S. 166 (1980).[5] From this implication,[6] the Court further

---

quate and independent state ground. See *Cicenia* v. *Lagay, supra; Konigsberg* v. *State Bar of California*, 353 U. S. 252 (1957).

[4] The Court reports that the Court of Appeals cited four Texas cases, but one case was cited as procedural history in the dispute between these parties, not as relevant to any question of Texas law. See 630 F. 2d, at 1034, n. 8.

[5] *Fritz* was decided on December 9, 1980; as the Court of Appeals had decided this case on November 17, 1980, it could not have been influenced by *Fritz*.

[6] This Court has never rejected either *Royster Guano* or *Reed* v. *Reed*. As stated in *Fritz*, "[t]he most arrogant legal scholar would not claim that all [Supreme Court] cases appl[y] a uniform or consistent test under equal

infers that "the Texas standard and the federal standard" may not be congruent.  The best answer to this speculative syllogism is found in the discussion of rational-basis analysis by the Court of Appeals.  In an Appendix hereto I include the three paragraphs of the opinion that discuss the rational-relationship standard of review.  It will be noted that nine United States Supreme Court cases were cited.  Although three Texas cases were cited also, there is not the slightest indication that the Court of Appeals was distinguishing between federal and state law.  Moreover, in the subsequent pages applying rational-relationship review, the court did not cite or discuss a single Texas case or any aspect of Texas law, though 11 federal cases were cited and discussed.  630 F. 2d, at 1039–1040 (not included in Appendix).

Finally, the Court relies on our traditional reluctance to decide a constitutional question unnecessarily.  But we noted jurisdiction to consider the validity of the Mesquite ordinance, and this question is squarely presented.  As a general matter, the Court should avoid unnecessary remands; this is particularly true when the Court's mandatory jurisdiction has been invoked under § 1254(2).  Neither the Court of Appeals nor appellee has presented any substantial reason for thinking that the Mesquite ordinance is invalid under Texas law independently of federal law that clearly was the basis for the decision below.  In these circumstances, we have a duty to decide the substantive questions presented.

---

protection principles."  449 U. S., at 177, n. 10.  In view of the example we have set, there is no reason to perceive inferences of divergent federal- and state-court views because of the failure of the Court of Appeals or Texas courts to use entirely consistent terminology.

Moreover, after its generalizations as to rational-basis analysis, the Court of Appeals for the Fifth Circuit went on to say that even if "the challenged ordinance had a rational basis . . . we would nevertheless be compelled to strike it down" as an infringement of the fundamental right of association.  630 F. 2d, at 1041.  No less than 29 federal cases were cited for this conclusion.  No Texas case was cited.  *Id.*, at 1041–1044.

APPENDIX TO OPINION OF JUSTICE POWELL*

"1. *Rational Basis*

"Assuming that the rational basis test is the appropriate standard of review, we conclude that no such rationality supports ordinance No. 1353. The test requires that legislative action be rationally related to the accomplishment of a legitimate state purpose. First, the challenged legislation must have a legitimate public purpose based on promotion of the public welfare, health or safety. *See, e. g., Rinaldi* v. *Yeager*, 384 U. S. 305, 309–10 . . . (1966); *Falfurrias Creamery Co.* v. *City of Laredo*, 276 S. W. 2d 351 (Tex. Civ. App. 1955, writ ref'd n.r.e.). Second, the act taken must bear a rational relation to the end it seeks to further. *See e. g., Griswold* v. *Connecticut*, 381 U. S. at 505–507 . . . (WHITE, J., concurring); *Schware* v. *Board of Bar Examiners*, 353 U. S. 232, 239 . . . (1957); *City of University Park* v. *Benners*, 485 S. W. 2d 773, 778–79 (Tex. 1972), appeal dismissed 411 U. S. 901 . . . (1973).

"The requirement of legislative rationality in the service of legitimate purposes protects individuals and their liberties from official arbitrariness or unthinking prejudice. As one commentator noted, irrationality at least means 'patently useless in the service of any goal apart from whim or favoritism.' Michelman, *Politics and Values or What's Really Wrong with Rationality Review?* 13 Creighton Law Review 487, 499 (1979). The test requires that legislation constitute a means that is 'reasonable, not arbitrary and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation . . . "'" *Texas Woman's University* v. *Chayklintaste*, 530 S. W. 2d 927, 928 (Tex.

---

*This includes the entire discussion of the rational-basis standard of review by the Court of Appeals. 630 F. 2d, at 1039. It is this portion of the Court of Appeals' opinion that the Court today relies on for saying that "it is surely not evident that the Texas standard and the federal standard are congruent." *Ante*, at 294. See *supra*, at 301–302, and n. 6.

1979), citing *Reed* v. *Reed*, 404 U. S. 71, 76 . . . (1971). *Accord, United States Department of Agriculture* v. *Moreno*, 413 U. S. 528 . . . (1973); *James* v. *Strange*, 407 U. S. 128 . . . (1972); *Jackson* v. *Indiana*, 406 U. S. 715 . . . (1972); *Stanley* v. *Illinois*, 405 U. S. 645 . . . (1972); *Eisenstadt* v. *Baird*, 405 U. S. 438 . . . (1972).

"Examination of ordinance No. 1353 reveals two stated purposes. First, the ordinance seeks to prevent truancy. Second, it seeks to keep minors from being exposed to people 'who would promote gambling, sale of narcotics and other unlawful activities.' We conclude that the seventeen year old age requirement in no way rationally furthers these interests in regulating the associational activity of Mesquite's young citizens, even making the assumption that both of these goals are legitimate." 630 F. 2d, at 1039.