**JONES INTERCABLE, INC. and Cable TV Fund 11–E/F Venture by Jones Intercable, Inc., its general partner, Plaintiffs,**

v.

**CITY OF STEVENS POINT, WISCONSIN, Defendant.**

**No. 89–C–551–C.**

United States District Court, W.D. Wisconsin.

Jan. 25, 1990.

---

Peter F. Krug, Foley & Lardner, Madison, Wis., for plaintiffs.

Louis J. Molepske, Stevens Point, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This case is before the court on plaintiff's motion for summary judgment. Plaintiff[1] provides cable services nationwide and brought this action against its subscriber, defendant City of Stevens Point, Wisconsin, seeking injunctive and declaratory relief under the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559, and the First Amendment to the United States Constitution. In May 1989 defendant issued a notice of default demanding that plaintiff either reinstate two cable channels that plaintiff had dropped from the Stevens Point cable system or face franchise revocation proceedings. Plaintiff challenges defendant's issuance of this notice of default on four grounds: (1) defendant has no ground to revoke plaintiff's franchise because plaintiff did not violate its cable franchise when it dropped USA Network and WWOR from the Stevens Point cable service package; (2) defendant has no ground to revoke plaintiff's franchise because plaintiff did not violate the Cable Communications Policy Act by failing to request modification of the franchise agreement before dropping the stations; (3) under the Cable Communications Policy Act, defendant lacks the authority to enforce specific programming requirements in a franchise agreement; (4) defendant violated the First Amendment by demanding that plaintiff reinstate specific stations to the Stevens Point cable system. Defendant responds that its recent withdrawal of the notice of default makes this action moot.

I conclude that this action has not become moot as a result of defendant's voluntarily withdrawal of the notice of default. I conclude as a matter of law that plaintiff did not violate its franchise agreement when it dropped USA Network; I cannot reach the same conclusion with respect to WWOR. I conclude that plaintiff was not required to request modification of its franchise agreement under the Cable Communications Policy Act before dropping the stations. Finally, I conclude as a matter of law that the Cable Communications Policy Act prohibits defendant from requiring plaintiff to reinstate the two channels plaintiff dropped in 1989. Because I conclude that defendant's action violates federal law, I do not reach plaintiff's alternative argument that defendant's action violates the First Amendment.

Based on the parties' proposed findings of fact and supporting materials, and for the purpose only of deciding this motion, I

---

1. There are two plaintiffs in this case, Jones Intercable and Cable TV Fund 11–E/F Venture. Jones Intercable is a Colorado corporation and is also the general partner of Cable TV Fund, a joint venture. Cable TV Fund appears in this suit by Jones Intercable. Throughout this opinion, I will refer collectively to Jones Intercable in its corporate capacity and in its capacity as Cable TV Fund's general partner as "plaintiff."

find there is no genuine issue as to the following material facts.[2]

### Undisputed Facts

Plaintiff Jones Intercable, Inc. is a corporation organized under the laws of the State of Colorado, with its principal place of business in Englewood, Colorado. Plaintiff Cable TV Fund 11–E/F Venture is a Colorado joint venture composed of Colorado limited partnerships of which plaintiff Jones Intercable is the general partner. Defendant City of Stevens Point, Wisconsin is a municipal corporation organized and operating under the laws of the State of Wisconsin.

Plaintiff owns and operates a cable television system in the city of Stevens Point, Wisconsin and surrounding areas. Plaintiff receives signals from various sources, processes the signals and distributes them to subscribers.

On July 18, 1977, defendant by its Common Council enacted Chapter 17 of its Municipal Code of Ordinances entitled the "Broadband Telecommunications Franchise Enabling Ordinance," which prohibits any person from providing cable television service in Stevens Point without a municipal franchise. Section 17.10(1) of this ordinance permits the city to revoke a cable television franchise if a grantee defaults in the performance of any of its obligations under the franchise and fails to cure the default within 30 days after receiving written notice of the default. The ordinance subjects the grantee of a franchise to "all lawful exercise of the police power by the City and other duly authorized regulatory State and Federal bodies." § 17.05(9). In addition, § 17.09(7) states

the Grantee, by the acceptance of any franchise awarded hereunder, agrees that the matters contained in the Grantee's application for franchise and as stated in oral presentation, except as incon-

sistent with the FCC Rules and Regulations, law or ordinance, shall be incorporated into the franchise as though set out verbatim.

Municipal cable franchises take effect upon acceptance by the grantee "and shall continue in full force for a term of ... not more than ten (10) years." § 17.04(3).

On November 21, 1977, defendant granted a television franchise to Teltron Cable TV, a division of WTMJ, Inc.

In an April 8, 1981 meeting, the city's telecommunications commission discussed Teltron's 22 channel line-up, which included both WWOR and USA Network. Both WWOR and USA Network offer general entertainment programming that includes sports, movies and children's programming.

In September 1981, a dispute arose between Teltron and defendant regarding whether Teltron could unilaterally change one channel in its line-up, channel 6, without defendant's permission. In a letter to alderperson Joel Muhvic, Teltron vice president Bruce Armstrong stated,

I might point out that our perception of channel 6 as "our channel" and thus within our perview [sic] to change does not extend to WOR, CBN, CNN, or any of the channels we added by agreement with the Commission. We recognize that any changes there require Commission approval.

On or about September 19, 1984, Teltron asked the city to approve an assignment of its municipal franchise to plaintiff.

In a January 21, 1985 meeting, the Stevens Point City Council passed a resolution approving the transfer and extension of Teltron's cable franchise to plaintiff. In an agreement entitled "Award of Cable Television Franchise" signed by the defendant on February 2, 1985 and accepted by plaintiff on March 1, 1985, defendant approved the "assignment and transfer of the fran-

---

2. Defendant has not submitted any proposed findings of fact as required by this court's Procedures for the Filing of Summary Judgment Motions. Defendant did submit an affidavit and exhibits in support of its brief in opposition to plaintiff's motion. However, the matters addressed in the affidavit and exhibits do not raise a dispute as to any of plaintiff's proposed findings of fact. Insofar as defendant's affidavit and exhibits provide material facts in addition to plaintiff's proposed findings, I have incorporated them into these findings of undisputed facts.

chise rights and assets of Teltron, Inc." to plaintiff. Paragraph 23 of the agreement states in full,

> The Venture agrees not to decrease the number and kinds of basic service channels offered to subscribers below the current level.

Jones offers its video programming to subscribers on "Basic Service" channels and "Premium" channels. Basic service channels are those made available to all subscribers for a flat monthly charge. Premium channels are those for which subscribers must elect to pay charges above and beyond the flat monthly charge. At the time of the transfer of the franchise from Teltron to plaintiff, Teltron offered programming on a total of 27 channels. Two of those channels were premium channels (HBO and Cinemax). The remaining 25 channels were basic service channels. By January 1989, Jones provided programming on a total of 34 channels. Four of those channels were premium service channels (Disney Channel, HBO, Cinemax and Showtime). The remaining 30 channels were basic service channels.

On January 1, 1989, plaintiff dropped WWOR from its channel line-up and replaced it with TNT, a cable television satellite service offering general entertainment programming, including sports, movies, and children's programming. The city did not receive a written notice or request for modification regarding this action.

On January 3, 1989, plaintiff dropped USA Network from its channel line-up and replaced it with two services which share the same channel: VISN, a religious cable service, and SportsChannel–America, a sports service. The city did not receive a written notice or request for modification regarding this action.

On April 12, 1989, the Telecommunications Commission of the City of Stevens Point issued a document entitled "Findings of Fact and Conclusions" regarding the deletion of WWOR from the Stevens Point Cable System. The commission found,

> The unique aspects of WWOR, namely, the east coast programming, cannot be provided by another service currently on the Stevens Point cable system. TNT does not provide east coast programming.

The commission concluded that the deletion of WWOR and its substitution with TNT violated the franchise agreement, the city's ordinance and 47 U.S.C. § 545.

Defendant issued similar findings and conclusions regarding the deletion of USA Network. The committee found,

> USA Network has considerably different programming, a different mix, from VISN or Sportschannel America. VISN is a religious channel with religious programming. Sportschannel America provides National Hockey League games, college and high school basketball and minor sports. USA offers programming that includes animated children's programs, feature films, game shows, music shows and several other categories of programming ... Many USA shows are newly produced, exclusively for USA, and almost all of the programs on USA cannot be seen on another channel in Stevens Point.

The committee concluded that the deletion of USA Network and its substitution with VISN and Sportschannel America violated the franchise agreement, the city's ordinance, and 47 U.S.C. § 545.

On May 17, 1989, defendant by its common council issued a Notice of Default to plaintiff, which incorporated the findings of the commission with regard to both WWOR and USA Network and ordered plaintiff to reinstate USA Network and WWOR within 30 days or face franchise revocation proceedings under § 17.10(2) of the city ordinance.

On October 17, 1989, defendant by its common council withdrew the May 17 notice of default.

On November 6, 1989, the chairman of the City of Stevens Point Telecommunications Commission told plaintiff's general manager that defendant wanted to get this action out of federal court in order to impose available state or local penalties on plaintiff for its deletion of USA Network and WWOR.

## OPINION

### A. Mootness

Before addressing the substance of plaintiff's summary judgment motion, I must determine whether defendant's withdrawal of its notice of default makes this case moot. When the issues in a case are no longer live or the parties lack a legally cognizable interest in the outcome, the case is moot and a federal court loses jurisdiction over it. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). However, it is well established that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). For a defendant's voluntary cessation to render a case moot, (1) there must be no reasonable expectation that the alleged violation will recur, and (2) the effects of the alleged violation must have been completely and irrevocably eradicated. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). In a voluntary cessation case, the defendant bears a heavy burden to persuade the court that a controversy is moot. *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir.1988).

I conclude that defendant has not met this burden. First, there is a reasonable expectation that defendant's purported violations of federal and constitutional law will be repeated. Defendant has not disavowed any further efforts to force plaintiff to continue certain programs, rather its telecommunications commission chairpersons has stated that defendant will seek available state remedies against plaintiff. This indicates that defendant's withdrawal of its notice of default was designed to terminate only its efforts to enforce alleged franchise obligations in this court. It is reasonable to conclude from the statements that any violations of federal and constitutional law resulting from defendant's efforts to enforce specific programming decisions will recur. Second, the fact that defendant was willing to issue a notice

of default may have a chilling effect on plaintiff's exercise of First Amendment rights. *See Charles v. Daley*, 749 F.2d 452, 458 (7th Cir.1984). Defendant's withdrawal of the notice of default does not alter the effect that its actions may have on plaintiff's programming decisions in the future. Therefore, defendant has not met its burden of proving that its voluntary cessation of alleged federal and constitutional law violations is sufficient to render this case moot.

Although voluntary cessation does not render a case moot, it does affect the propriety of injunctive relief. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Because defendant has withdrawn its notice of default seeking to subject plaintiff to revocation proceedings, it would be inappropriate to issue an injunction prohibiting defendant from pursuing these revocation proceedings.

However, plaintiff seeks declaratory as well as injunctive relief. Plaintiff seeks a declaratory judgment that it did not violate either 47 U.S.C. § 545 or its franchise agreement. In addition, plaintiff seeks declaratory judgments that defendant exceeded its regulatory authority under the Cable Communications Policy Act and violated the First Amendment when it demanded that plaintiff reinstate the two networks. Because I conclude that the issues in this case are not moot, I will examine whether defendant's actions seeking to revoke plaintiff's franchise and to require plaintiff to reinstate USA Network and WWOR violated federal, constitutional, or contract law.

### B. Violation of Franchise Requirements

Defendant provides two justifications for its assertion that plaintiff violated the franchise agreement by dropping USA Network and WWOR. First, defendant contends that plaintiff breached pre-Act franchise obligations established by its predecessor Teltron and assigned to plaintiff in February 1985. Second, defendant contends that dropping the stations decreased the kinds of basic service channels in the

Stevens Point cable system, in violation of paragraph 23 of the parties' post-Act written franchise agreement.

Whether plaintiff's franchise obligations pre-dated the Cable Communications Policy Act is significant to the question of defendant's authority to demand that plaintiff reinstate USA Network and WWOR. Under the Act, franchising authorities have broader powers to enforce specific programming provisions in franchises already in existence on its effective date of December 30, 1984, than they have to enforce such provisions in franchises granted after the effective date. With respect to post-Act franchises, the Act permits franchising authorities to regulate only "broad categories of video programming or other services." 47 U.S.C. § 544(b)(2)(B). However, with respect to pre-Act franchises, franchising authorities may enforce other requirements contained within the franchise for the provision of services, facilities and equipment. 47 U.S.C. § 544(c).

1. Pre–Act franchise obligations

■ Defendant argues first that a pre-Act implied agreement between it and plaintiff's predecessor, Teltron Cable TV, is binding on plaintiff. Defendant admits that Teltron never had an express written franchise agreement. However, defendant claims it was the mutual understanding of Teltron and defendant, memorialized in Teltron vice president Bruce Armstrong's September 1981 letter, that Teltron would not change any of the channels in its line-up without the approval of the city's telecommunications commission. Defendant argues that this understanding now binds plaintiff because Teltron's obligations were assigned and transferred to plaintiff in February 1985.

Defendant's argument is without legal merit. Elementary principles of contract law dictate that in order to establish an oral or implied contract there must be a mutual intent to contract. *Schaller v. Marine National Bank*, 131 Wis.2d 389, 398, 388 N.W.2d 645, 649 (1986). Even assuming that defendant and Teltron had a mutual agreement that Teltron would not drop a

station from the cable line-up without defendant's permission, Teltron's agreement to such a requirement cannot bind plaintiff without plaintiff's assent. Defendant has submitted no evidence to support a conclusion that plaintiff even knew that Teltron and defendant had such a mutual agreement.

Furthermore, the extension of the Teltron franchise to plaintiff in 1985 would itself be a post-Act franchise for the purpose of defining defendant's enforcement authority. The Cable Communications Policy act defines "franchise" broadly as

an initial authorization or renewal thereof ... issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the ... operation of a cable system.

47 U.S.C. § 522(8) (emphasis added). On January 21, 1985, defendant's city council adopted a resolution extending Teltron's franchise and approving its transfer to plaintiff. The definition of franchise contained in the Cable Act is sufficiently broad to include the city's resolution. Therefore, even if Teltron's franchise obligations were transferred to plaintiff, they would postdate the Act for purposes of the city's powers of enforcement.

2. Post–Act franchise provisions

■ Defendant contends that plaintiff violated paragraph 23 of the February 1985 "Award of Cable Television Franchise" when it dropped USA Network and WWOR. Paragraph 23 of the agreement states in full:

The Venture agrees not to decrease the number and kinds of basic service channels offered to subscribers below the current level.

Defendant argues that paragraph 23 represents plaintiff's express written commitment to continue providing the same kinds of programming that it inherited from Teltron, and that the deletion of the two channels decreased the kinds of programming available to Stevens Point basic service cable subscribers. Plaintiff responds that

paragraph 23 relates only to the facilities and not to programming content, and that since it had *increased* the number of basic service channels from 25 to 30 by January 1989, its replacement of the two networks with other programming did not violate paragraph 23. When the terms of a contract are clear and unambiguous, interpretation of the contract is a question of law, but when the contract contains ambiguous terms, the contract's meaning becomes a fact question whose resolution is inappropriate on a summary judgment motion. *Dribeck Importers v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989). Because neither party has submitted evidence sufficient to support its interpretation of paragraph 23, and the meaning is unclear from the face of the contract, I cannot conclusively interpret the franchise agreement on plaintiff's summary judgment motion.

■ Plaintiff argues in the alternative that even if paragraph 23 is a programming requirement, dropping USA Network and WWOR did not violate any interpretation of paragraph 23 that is enforceable under the Cable Communications Policy Act. With respect to post-Act provisions, the Cable Act permits franchising authorities to regulate only "broad categories of video programming or other services." 47 U.S.C. § 544(b)(2)(B).

Judicial interpretation of "broad categories of video programming" is sparse. However, one district court in this circuit has held that a cable franchise requiring programming of originating in the city of Chicago met the "broad category" definition. *Chicago Cable Communications v. Chicago Cable Com'n*, 678 F.Supp. 734, 747 (N.D.Ill.1988), *aff'd* 879 F.2d 1540 (7th Cir.1989). Regarding 47 U.S.C. § 544, the House Committee report states,

> the franchising authority may enforce provisions for broad categories of video programming (e.g., children's programming; programming in a particular foreign language; programming which is of primary interest to a particular minority group; news and public affairs programming; sports programming) ... a franchising authority is not permitted to es-

tablish particular service requirements which involve the provision of specific information to subscribers (e.g. a particular news service, a specific program, etc.).

H.R.Rep. No. 934, 98th Cong., 2nd Sess. 19, 68–69, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4705–06.

Unlike the "local origination" requirement upheld in *Chicago Cable*, paragraph 23 of the parties' agreement does not specify what categories of programming it requires. However, it does provide that the "kinds" of programming cannot be decreased. The findings of the telecommunications committee regarding the elimination of WWOR clarify that "east coast programming" provided by WWOR was not available on its substitute (TNT) or any other basic service channel on the Stevens Point cable system. The category "east coast programming" is similar to the category "local programming" upheld in *Chicago Cable*. In *Chicago Cable*, the court reasoned,

> if the Commission insisted that CCTV cover the Taste of Chicago (a local gastronomic festival) or the Prep Bowl (an annual high school football game between the best Public League team and the best Catholic League team), for example, we probably would have to conclude that the Commission overstepped its authority.
>
> However, ... [i]f a franchising authority may, consistent with the Cable Act, insist on programming of particular interest to a specific minority group, then surely a franchising authority may insist on programming with less constraints, i.e., programming of interest to a city or a portion of that city.

*Chicago Cable*, 678 F.Supp. at 747. I conclude that "east coast programming" is a sufficiently broad category to stay within the limits of a franchising authority's enforcement power. Because there is evidence that this kind of programming was no longer available after plaintiff dropped WWOR, I cannot rule as a matter of law that plaintiff did not violate an enforceable

franchise provision by replacing WWOR with TNT.

■ With respect to the deletion of USA Network, the situation is different. The telecommunications committee did not specify any broad category of programming available to Stevens Point subscribers before USA Network was dropped that was no longer available after its substitution with VISN and Sportschannel America. Although the committee noted that "USA Network has considerably different programming, a different mix, from VISN or Sportschannel America," this does not establish that USA Network was unique in providing any broad category of programming. To the contrary, the committee found, "Many of USA shows are newly produced, exclusively for USA, and almost all of the programs on USA cannot be seen on another channel in Stevens Point." (emphasis added). Because there is no evidence even suggesting that the deletion of USA Network deprived Stevens Point viewers of any broad category of programming, I will grant plaintiff's motion for summary judgment on its request for a declaratory judgment that it did not violate any enforceable interpretation of the franchise by dropping USA Network from the Stevens Point cable system.

What remains at issue in this case is the question whether plaintiff's action in dropping WWOR from the Stevens Point cable violated an enforceable franchise provision. This issue requires determination of the question whether paragraph 23 of the franchise agreement was intended by the parties to relate to facilities, as plaintiff contends, or programming, as defendant contends.

### C. Section 545 Modification Procedures

■ Defendant contends that plaintiff should have availed itself of the procedures in the Cable Communications Policy Act, 47 U.S.C. § 545, before dropping USA Network and WWOR. Under these procedures, obtaining a modification of a requirement for the provision of services required a cable operator to demonstrate to the franchising authority that the proposed modification will not alter the "mix, quality and level of services" required by the franchise at the time it was granted. 47 U.S.C. § 545(a)(2).

I conclude that the Cable Act does not require plaintiff to invoke the modification procedures before dropping USA Network and WWOR from the Stevens Point cable system. I ruled in the previous section that by dropping WWOR, plaintiff may have violated paragraph 23, prohibiting it from decreasing "the number and kinds of basic service channels offered to subscribers." Even assuming that plaintiff eliminated east coast programming, and thus decreased the "kinds" of channels offered, when it dropped WWOR, its action did not require a modification of paragraph 23. If the franchise agreement had specifically required east coast programming, then plaintiff should have sought modification under 47 U.S.C. § 544 before eliminating east coast programming. However, the franchise agreement does not require the provision of any specific broad category of programming. By not specifying the kinds of programming in more detail in the franchise agreement, defendant loses the opportunity to enforce its provisions under § 544.

### D. Defendant's Demand for Reinstatement of Specific Cable Stations

■ Regardless how paragraph 23 is interpreted, defendant was without authority to enforce that provision by requiring plaintiff to reinstate specific cable services. Under the Act, franchising authorities may regulate only "broad categories of video programming or other services." 47 U.S.C. § 544(b)(2)(B). Regarding 47 U.S.C. § 544, the Committee report states,

> The Committee does not intend by this provision to give franchising authorities indirectly, such as through the renewal process, the authority to require the cable operator to offer certain program services or service packages.

House Report 934 at 69, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 4706.

Even accepting plaintiff's characterization of paragraph 23 as a "broad categories" provision, and even assuming that deletion of WWOR violated that provision, it would fly in the face of the spirit and policies of the Act to permit a franchising authority to enforce a broad categories provision by requiring a cable operator to carry specific cable services. If plaintiff did breach the franchise by dropping WWOR, defendant could have demanded that plaintiff reinstate the kind of programming WWOR had previously provided (i.e. east coast programming). However, what defendant chose to do overstepped its enforcement authority under the Cable Act.

Therefore, I will grant plaintiff's motion for summary judgment on its request for a declaratory judgment that defendant violated the Cable Communications Policy Act when it demanded that plaintiff reinstate specific cable stations to the Stevens Point system. Accordingly, I will not reach plaintiff's alternative request for a declaratory judgment that defendant's actions violated the First Amendment.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

Upon resolution of the final issue in this case, that is, whether plaintiff violated the franchise agreement when it dropped WWOR from its Stevens Point cable service package and did not replace it with a station providing programming in a broad category provided by WWOR, I will order that a judgment be entered declaring that

(1) plaintiff did not breach its franchise agreement with defendant when plaintiff dropped USA Network from the Stevens Point cable system;

(2) the Cable Communications Policy Act does not require plaintiff to avail itself of the franchise modification procedures in 47 U.S.C. § 544 before dropping specific cable stations;

(3) defendant violated the Cable Communications Policy Act by demanding that plaintiff reinstate specific cable services to the Stevens Point cable system.