R. GUY COLE, Jr.,
concurring.
I agree with much of the majority’s thoughtful opinion and write separately only to stress that this is a unique case, unlikely to recur. Any one of a number of small deviations from the facts before us would, in my opinion, necessitate that this Court reach the merits of plaintiffs claim under the voluntary cessation exception to mootness.
As the Supreme Court and the majority noted, “[i]t is well-settled that a defendant’s voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.” City of Mesquite v. Aladdin’s Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). At issue in City of Mesquite were two sections of a municipal licensing ordinance governing coin-operated arcades. Id. at 284-85, 102 S.Ct. 1070. Prior to oral argument, Mesquite revised the ordinance to eliminate the offensive statutory language. Because “[t]here [was] no certainty that a similar course would not be pursued if [Mesquite’s] most recent amendment were effective to defeat federal jurisdiction,” the Court declined to find the matter moot. Id.
“In accordance with this principle, the standard [the Supreme Court] has announced for determining whether a case has been mooted by the defendant’s voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” Friends of the Earth, *409 Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2002) (internal citations and quotations omitted); see also United States v. Farmers of Am., Inc., 426 F.3d 850, 857 (6th Cir.2005) (referring to the “heavy burden of persuasion” faced by a defendant asserting mootness based on voluntary cessation (quoting United States v. Concentrated Phosphate Export Ass’n, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968))).
As the majority noted, were Mayor McKelvey, rather than his successor, May- or Williams, to have revoked the no-comment policy, our analysis would be different. Mayor Williams’ only relationship with the no-comment policy has been one of apparent opposition. Not only did he officially revoke the policy, he did so in writing, and even sent a copy to The Business Journal. One questions whether Mayor Williams voluntarily terminated the policy at all, or whether he merely indicated the obvious: that, with Mayor McKelvey out of office, the policy was defunct.
That said, I would place decidedly less stock in the commentary, cited by this Court in Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir.1990), and again by today’s majority, to the effect that apparently genuine self-correction by a government official, without more, provides a secure foundation for a dismissal based on mootness. Id. at 415 (citing Wright, Miller & Cooper, 13A Fed. Prac. & Proc. § 3533.7 (2d ed.)). This rule, if over-extended, could create an exception within an exception, shifting as though weightless the allegedly heavy burden back to the plaintiff to show disingenuousness. Such a shift is unwarranted: after all, official conduct was involved in City of Mesquite itself, an early, seminal, and heavily-cited voluntary cessation case. 455 U.S. at 289, 102 S.Ct. 1070 (“In this case the city’s repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court’s judgment were vacated.”).
Indeed, where the Supreme Court has declined to reach an issue as moot on the basis of official representation alone, it has specifically distinguished the context of voluntary cessation:
There is a line of decisions in this Court standing for the proposition that the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. These decisions and the doctrine they reflect would be quite relevant if the question of mootness here had arisen by reason of a unilateral change in the admissions procedures of the Law School.
DeFunis v. Odegaard, 416 U.S. 312, 318, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (internal citation omitted); see also Preiser v. Newkirk, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (“We have before us more than a mere voluntary cessation of allegedly illegal conduct”) (internal quotation omitted).
I note also that were Mayor McKelvey’s edict to reach the citizens of Youngstown, rather than just its employees, or were his no-comment policy broader than a personal reaction to criticism, then Mayor McKelvey’s conduct might be imputed to the City itself. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (“[Ojfficials whose acts or edicts may fairly be said to represent official policy, ... may give rise to municipal liability under § 1983. Indeed, any other conclusion would be inconsistent with the principles underlying § 1983.”) (internal quotation omitted). In contrast to the new mayor, the City has, according to its representations before this Court, steadfastly asserted the propriety and legality of the no-comment policy as a reaction to negative press. Thus, the City would not, in *410 my view, overcome its burden to make “it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” Friends of the Earth, 528 U.S. at 189,120 S.Ct. 693.
With these qualifications in mind, I concur in the majority opinion.