**SIERRA CLUB, Plaintiff,**

v.

**Gary E. CARGILL; F. Dale Robertson; and Lloyd Todd, Defendants,**

**and**

**Wyoming Sawmills, Inc.; Ernie Schmidt; and Sheridan County Economic Development Council, Intervenors.**

**Civ. A. No. 89–F–1242.**

United States District Court, D. Colorado.

Feb. 13, 1990.

Federico Cheever and Douglas L. Honnold, Sierra Club Legal Defense Fund, Denver, Colo., for plaintiff.

Michael J. Norton, Acting U.S. Atty., Jerry R. Atencio, Asst. U.S. Atty., Denver, Colo., and Wells D. Burgess, and K. Jack Haugrud, U.S. Department of Justice, Land and Natural Resources Div., Gen. Litigation Section, Washington, D.C., for defendants.

Martha J. Ridgway, Krendl & Krendl, P.C., Denver, Colo., and Michael E. Haglund, and Scott W. Horngren, Haglund & Kirtley, Portland, Or., for intervenors.

## MEMORANDUM OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER comes before the court on cross-motions for summary judgment filed by plaintiff Sierra Club and federal defendants (the "Forest Service"). Plaintiff brings this action seeking declaratory and injunctive relief for alleged violations of the National Forest Management Act, 16 U.S.C. § 1600 *et seq.* (the "NFMA") arising from the Forest Service's adoption of a seven-year regeneration standard for harvest of lodgepole pine in the Bighorn National Forest in the State of Wyoming. Jurisdiction is based on 28 U.S.C. §§ 1331 and 2201–2202.

Plaintiff Sierra Club is a non-profit organization dedicated to the protection, study and enjoyment of the nation's public lands. Defendant Gary E. Cargill is the Regional Forester of the Rocky Mountain Region of the United States Forest Service; defendant F. Dale Robertson is the Chief of the United States Forest Service; defendant Lloyd Todd is the Forest Supervisor for the Bighorn National Forest. Among other duties, the Forest Service regulates commercial timber operations on the nation's national forests. All defendants are sued in their official capacity. Intervenors claim legal and equitable interests in this action. Intervenor Wyoming Sawmills, Inc. is an employer in Sheridan County, Wyoming, which is adjacent to the Bighorn National Forest; intervenor Ernie Schmidt is a local resident of the County; and intervenor Sheridan County Economic Development Council is an organization that promotes the economic well-being of the County. On October 24, 1989 we granted intervenors' motion to intervene, for the limited purpose

of briefing issues raised by plaintiff and defendants. Intervenors were allowed to participate in discovery. Plaintiff's complaint seeks the following declaratory and injunctive relief:

1. Declaration that the seven-year regeneration standard is in violation of the NFMA and its implementing regulations;

2. Setting aside of those portions of the Bighorn Forest Plan complained of and remand of the Bighorn Forest Plan to the Forest Service for revision in compliance with the NFMA, its implementing regulations and applicable law;

3. Declare unlawful cutting of lodgepole pine stands on the Bighorn National Forest except for stands that the Forest Service can assure, based on research and experience, will be adequately restocked within five years after harvest;

4. Preliminarily and permanently enjoin the Forest Service from further cutting of lodgepole pine stands on the Bighorn National Forest except for stands the Forest Service can assure, based on research and experience, will be adequately restocked within five years after harvest.

Parties stipulate plaintiff's requests for declaratory and injunctive relief may be adjudicated on cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. We heard oral argument from all parties on the motions for summary judgment on January 30, 1990. Our analysis is limited to questions of law as there is little dispute over fact. We have reviewed the administrative record and the recent Forest Service directives, and have considered the parties' briefs and oral arguments. The Chief's December 5, 1989 directive modifies and overrides the administrative decision issued December 21, 1988, which held the seven-year standard legal. We have considered the administrative decision, however we are not bound by it. We analyze the legality of the Bighorn Forest Plan after issuance of the Chief's directive. Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment is DENIED. The issues to decide are the following:

1. Whether plaintiff's cause of action is mooted by the Forest Service's intent to adopt a five-year restocking standard;

2. If not, whether the Bighorn Forest Plan complies with federal regulations; and

3. Whether this court may enjoin the Forest Service from authorizing cutting of lodgepole pine stands unless the Forest Service can assure, based on research and experience, those stands will be adequately restocked within five years.

## I. BACKGROUND

### A. Factual Background

The 1,115,172-acre Bighorn National Forest is located in the plains of north-central Wyoming. The dominant tree species is the lodgepole pine, which occupies 66 percent of the total land designated as suitable for timber production. (Final Environmental Impact Statement for the Bighorn National Forest Land and Resource Management Plan at IV–62). The Forest Service regulates commercial foresting in the Bighorn. Two systems are used to harvest timber in the Bighorn forest. Under the clearcutting system all trees are cut in an area, which is then artificially replanted or left to reseed naturally. Under the shelterwood system mature trees are cut in stages, allowing the remaining mature trees to reseed the area and shelter the seedlings.

### B. Statutory and Regulatory Background and Procedure Below

Congress passed the National Forest Management Act in 1976 to manage the nation's forests and maintain renewable resources. Section 6(g)(3)(E)(ii) of the NFMA (Title 16 U.S.C. § 1604(g)(3)(E)(ii)) requires the Forest Service to insure that timber will be harvested from national forests only if such lands can be restocked within five years after harvest.

The NFMA requires the Forest Service to develop, maintain and revise land and resource management plans ("LRMPs") for National·Forest units. 16 U.S.C. § 1604(a). LRMPs must provide for the multiple use

and sustained yield of the products and services obtained from the Forest in accordance with the Multiple–Use Sustained–Yield Act of 1960. 16 U.S.C. §§ 528–531. The LRMP is required to specify guidelines which require the identification of the suitability of lands for resource management such as timber production ("timber suitability"). For a detailed discussion of the relevant statutory and regulatory background, see *Citizens for Environmental Quality v. United States*, 731 F.Supp. 970 at 976 (D.Colo.1989).

The Bighorn Forest Plan (the "Bighorn Plan" or the "Plan") was approved on October 4, 1985. The final Plan includes a seven-year restocking standard and not a five-year standard as required by the NFMA. Under the final Plan, areas could be harvested despite a seven-year period for regeneration. On November 1, 1985 plaintiff administratively appealed the adoption of the Plan. Plaintiff challenged the Plan based on its failure to insure a five-year regeneration standard. The appeal was denied on December 21, 1988. In the final decision, the Forest Service held that the final Plan's seven-year standard complied with the NFMA and its implementing regulations. (Appeal Decision, p. 11, Administrative Record V.I, Ex. 42, December 21, 1988). The instant action was filed seeking declaratory and injunctive relief.

## II. JUSTICIABILITY

■ On December 13, 1989 federal defendants filed a motion to dismiss this action as moot. Plaintiff filed an opposition to the motion on December 22, 1989. Federal defendants based the motion on the Forest Service's issuance of two directives as to the Bighorn Plan. On December 5, 1989 the Chief of the Forest Service issued a directive to the Regional Forester to (1) amend the Forest Plan to assure lands are capable of being adequately restocked within five years after harvest and (2) require a finding that adequate restocking is expected to occur within five years after final harvest. On December 6, 1989 the Regional Forester issued a directive to the Forest Supervisor to implement the Chief's

directive. Federal defendants contend these directives (collectively the "December directives") moot this action.

The voluntary cessation of the seven-year standard does not render this case moot. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Generally the voluntary cessation of allegedly illegal conduct does not deprive the court of its power to hear and determine the case. *Id.* Voluntary cessation will not render a case moot if two requisites are satisfied: (1) it can be said with assurance there is no reasonable expectation the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Id.* The burden of demonstrating mootness is a heavy one. *Id.* Defendants have not demonstrated this case is moot.

Federal defendants do not satisfy the first requirement. Plaintiff alleges the seven-year standard is illegal. The Forest Service directives are a voluntary cessation of the seven-year standard. Even though the Forest Service intends to follow a five-year standard the Forest Service has not repudiated the legality of the longer standard. The Forest Service still considers the seven-year standard to be legal and there is no guarantee the Forest Service will not revert to its use. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). Federal defendants do not satisfy the second requirement for mootness. The directives do not irrevocably eradicate the effects of the alleged violation. Although the directives purport to embrace a five-year standard it has not been implemented. The Forest Supervisor has not amended the Plan to delete the seven-year standard as directed by the Regional Forester. When the Chief's directives are implemented the Bighorn Forest Plan's prior designation of lands suitable for timber production will continue to be based on the seven-year standard. Plaintiff strongly contends a seven-year timber suitability analysis fails under the requirements of the NFMA. The Forest

Service opposes any finding that the seven-year standard violates federal law. The question of whether the Bighorn Forest Plan complies with federal regulations is still disputed and presents a justiciable controversy.

## III. ANALYSIS

### A. Timber Suitability and Legality of the Seven–Year Standard

■ The present timber suitability analysis for the Bighorn Plan is based on the seven-year standard. (Bighorn Forest Plan at III–53). In the December 5, 1989 directive to the Regional Forester, the Chief of the Forest Service directed the Bighorn Plan be amended as follows:

1. At the Plan Level there will be an assurance that lands are capable of being adequately restocked within five years after harvest; and

2. At the Project Level before any sale there must be a finding that adequate restocking is expected to occur within five years.

The directive is appropriately described as elliptical.

The Chief admits that suitability must be reexamined using the five-year standard, but states that suitability will be redetermined upon revision of the plan. A date for revision at the Plan Level, and hence redetermination of timber suitability, is not specified in the directive. Defendants contend the Chief's directive will be carried out by the end of March 1990. Actual timber suitability will allegedly be redetermined in 1998, when the Bighorn Plan is scheduled for revision. At the Project Level the directives do not identify the criteria upon which the Forest Service is to base its finding, nor identify who is to actually make the finding.

The seven-year standard violates federal law. The Bighorn Forest Plan, without appropriate replacement of the present seven-year standard, fails to comply with the NFMA and its implementing regulations.

Section 6(g)(3)(E)(ii) of the NFMA states: (g) ... the Secretary [of Agriculture] shall ... promulgate regulations ... that set out the process for the development and revision of land management plans, and the guidelines and standards prescribed by this subsection. The regulations shall include:

(3) specifying guidelines for land management plans developed to achieve the goals ... which—

(E) insure that timber will be harvested from National Forest lands only where—

(ii) there is an assurance that such lands can be adequately restocked within five years after harvest.

In developing LRMPs pursuant to Section 6(g)(3)(E)(ii) of the NFMA the Secretary of Agriculture shall identify lands which are not suited for timber production considering a number of pertinent factors. For a detailed discussion of timber planning *see, Citizens for Environmental Quality, v. United States*, 731 F.Supp. 970, 976 (D.Colo.1989). In that case we held NFMA implementing regulations require the Forest Service to identify and implement technology necessary for preventing irreversible soil damage. *Id.* at 26. Our analyses in *Environmental* are relevant and applicable to the instant action.

The implementing regulations for suitability analysis are contained in 36 C.F.R. § 219.14. That section sets forth criteria for making identification of lands suitable for timber production, collectively known as Stage 1. Under Stage 1 land is considered unsuitable for timber production if: (1) it is currently and historically less than 10 percent tree cover; (2) technology is not available to insure that timber production will not cause irreversible damage to soil or watersheds; (3) *it cannot be restocked within five years;* and (4) it has been administratively withdrawn from timber production. (Emphasis added). Regulation C.F.R. § 219.27(c)(3) is also designed to implement the five-year restocking standard. That regulation states that when trees are cut down to achieve timber production objectives, the cutting shall be made in such a way as to assure that technology and knowledge exists to adequately restock the lands within five years after final harvest.

Land which passes Stage 1 criteria is considered tentatively suitable for timber production, and may be assigned production management prescriptions. The remaining criteria contain two economic analyses. The first analysis requires an economic evaluation of management prescriptions as applied to particular analysis areas. This evaluation is referred to as Stage 2 analysis. The purpose of Stage 2 analysis is to determine the financial costs and measurable economic benefits of each management prescription. In essence, it is designed to provide information on the financial attractiveness of the various proposed alternatives.

Stage 3 of the suitability determination process provides in part that lands are not suitable for timber production if they are not "cost-efficient" in meeting the objectives of the alternative. 36 C.F.R. § 219.14(c). The consideration of cost-efficiency applies to the alternative as a whole, and not to timber production on a particular analysis area. Stage 3 is not a strict formulaic analysis that directly considers the financial costs and revenues associated with timber production on individual acres or analysis areas. Rather, it is a flexible analysis which must estimate the indeterminate values of non-economic benefits such as esthetics and recreation. The result of Stage 3 analysis is a conclusory statement that all acres assigned to timber production are suitable for timber production, and all areas which are not assigned to timber production are unsuitable.

The basic documents resulting from the planning process are the LRMP, its accompanying Environmental Impact Statement, and the Record of Decision wherein the decision-maker (the Regional Forester) selects the management scenario that best benefits the public. The selection considers all factors including both monetary and non-monetary costs and benefits. *See Environmental, supra* at 7–9.

1. Plan Level Compliance

At the Plan Level the Chief interprets the NFMA and its implementing regulations to require that harvested lands are capable of being regenerated within five years. The Chief relies on 36 C.F.R. 219.-27(c)(3), which requires that the technology and knowledge exist to adequately restock within five years. However, the Chief fails to adhere to the other requirements of the implementing regulations and specifically fails to comply with 36 C.F.R. § 219.27(c)(3). The regulation states the basis for determination of whether lands will be adequately restocked within five years shall be "research and experience." Our ruling in *Environmental* is helpful. In *Environmental* we interpreted 36 C.F.R. § 219.14(a)(2), which requires the Forest Service to designate unsuitable those national forest lands for which technology is not available to ensure timber production from the land without irreversible resource damage to soils productivity, or watershed conditions. We stated:

> We interpret § 219.14(a)(2) as follows. If there exists technology which is capable of adequately repairing short-term damage due to timber harvesting within a reasonable time, and provisions are made for the use of that technology, then timber production may be carried out despite whatever short-term damage may be caused. However, where timber harvesting is contemplated on potentially unsuitable lands, then the technology to be used in preventing irreversible damage must be identified and provisions made for its implementation.

*Environmental, supra* slip op. at 26.

We interpret § 219.27(c)(3) to require identification and implementation of technology to assure restocking within five years. The Forest Service satisfies this mandate by creating a realistic procedure or plan to implement technology to assure adequate restocking within five years.

In interpreting the statute, intervenors contend that if Congress intended the five-year standard to be absolute, it would have drafted the NFMA to require that lands "will" be adequately restocked, rather than "can" be restocked. If § 6(g)(3)(E)(ii) stated the land "will" be restocked, the Forest Service would be required to guarantee restocking within five years. Plaintiff and

federal defendants agree the current statute requires the Forest Service to use its best efforts and best judgment to assure that restocking occurs within five years. Intervenors contend § 219.27(c)(3) requires only that restocking within five years is possible. This "technological feasibility" argument is not persuasive. A technological feasibility interpretation of § 6(g)(3)(E)(ii) would render the five-year standard meaningless. Hypothetically, the technology exists to restock an area the size of the entire Bighorn National Forest (or the entire State of Wyoming) within five years. The Forest Service could potentially adopt a restocking standard of any length while the technology exists to restock within five years. In our view this argument supports the integrity of the five-year standard we adhere to.

The statutory and regulatory language clearly and plainly requires the Forest Service to insure that timber practices will achieve adequate restocking within five years. Accordingly we declare the seven-year regeneration standard contained in the Bighorn Forest Plan illegal as in violation of the NFMA and its implementing regulations. The seven-year regeneration provisions contained in the Bighorn Forest Plan are SET ASIDE and we hereby REMAND the Bighorn Forest Plan for revision. The Forest Service and federal defendants are DIRECTED to carry out this court's order forthwith to revise and amend the final Bighorn Forest Plan to comply with the NFMA and its implementing regulations by replacing the seven-year regeneration standard with a five-year regeneration standard in all aspects relating to harvest of lodgepole pine. The Forest Service is permanently ENJOINED from removing the five-year standard from the Bighorn Forest Plan.

### 2. Project Level Compliance

■ At the Project Level the Chief's December 5, 1989 directive requires a "finding" before any sale that the harvested acreage is expected to be restocked within five years. The criteria used to determine this interim solution are not established. Federal defendants further confuse the is-

sue by interpreting the Chief's directive to require a "determination" (as opposed to a "finding") that land will be restocked within five years. (Federal Defendants' Memorandum in Support of Motion for Summary Judgment, p. 3). Federal defendants contend such a site-specific finding is a proper guideline for determining suitability. The assurances of federal defendants the finding will likely include an environmental assessment and economic feasibility examination are vague and not persuasive.

The directive is inadequate as to site-specific suitability and fails to comply with the five-year standard that must govern timber suitability analysis pursuant to the NFMA. A case-by-case finding, without appropriate redetermination pursuant to the implementing regulations, does not assure lands can be restocked within five years as mandated by the NFMA.

### B. Injunctive Relief

### 1. Application to Future Contracts

■ Injunctive relief is in the sound discretion of the court. *Goldammer v. Fay*, 326 F.2d 268 (10th Cir.1964). Mandatory injunctive relief should be granted only under compelling circumstances. *Citizens Concerned, etc. v. City and County of Denver*, 628 F.2d 1289 (10th Cir.1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). The basis of injunctive relief is irreparable injury and inadequacy of legal remedies. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). The court must balance the competing claims of injury and must consider the effect on each party in granting or withholding the requested relief. *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). By its nature environmental injury can seldom be adequately remedied by money damages and is often permanent, or at least of long duration. That is, it may be considered irreparable. *Id.*, at 545, 107 S.Ct. at 1404. If such injury is sufficiently likely, then the balance of harms will usually favor the is-

suance of an injunction to protect the environment. *Id.*

■ Considering the totality of the circumstances in this case, limited injunctive relief is appropriate. There is no sufficient legal remedy in this case and there is no adequate assurance that reforestation under future contracts will occur within five years.

The Forest Service is hereby permanently ENJOINED from offering any land located on the Bighorn National Forest for harvest unless the Forest Service has first made a determination, based on research and experience, and pursuant to the implementing regulations and three-stage analysis discussed above, that the land is suitable for harvest. Plaintiff's motion for injunctive relief in regard to future sales is granted.

2. Application to Current Contracts

■ The Forest Service's December directives affect only timber sales occurring after December 6, 1989. Thirteen pending timber sales were approved prior to the directives and are based on the seven-year suitability analysis. Plaintiff seeks to enjoin the Forest Service from cutting lodgepole pine stands on the Bighorn National Forest under existing contracts unless the Forest Service can assure, based on research and experience, those stands will be adequately restocked within five years after harvest. Federal defendants and intervenors contend we may not apply the five-year standard to existing contracts. We agree.

The essence of equity jurisdiction is to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. *Hecht v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944).

An administrative decision should be carefully balanced to determine whether it should be applied prospectively only. *See, S.E.C. v. Chenery,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). We rely on assurances of federal defendants that (1) the Forest Service plans to monitor timber operations under existing contracts and (2)

the Forest Service will consider remedial measures such as artificial reseeding to assure five-year regeneration. We apply the standards set forth in *Retail, Wholesale and Department Store Union v. N.L. R.B.,* 466 F.2d 380, 390 (D.C.Cir.1972). This is a case of first impression, supporting retroactive application. Considering the totality of circumstances in this case however factors weigh against retroactive application. First, a number of parties, including intervenor Wyoming Sawmills, Inc., paid for timber harvesting rights in reliance on federal defendants' seven-year interpretation. Their contract rights are vested. Second, retroactive application of the five-year standard may impose an unreasonable burden on parties to existing contracts. We are persuaded by contentions of intervenors that retroactive application of the five-year standard will unreasonably disrupt milling operations in Sheridan County. Finally, the statutory interest in applying the five-year standard despite reliance on the seven-year standard is not strong in light of assurances of federal defendants they will monitor timber operations and consider remedial measures. Considering the balance of interests in this case retroactive application of the Chief's December 5, 1989 directive is inappropriate. *Id.; see also, Safarik v. Udall,* 304 F.2d 944, 949–50 (D.C.Cir.1962). Plaintiff's motion for injunctive relief in regard to existing timber contracts is denied.

ORDER

ACCORDINGLY, IT IS ORDERED that the motion of plaintiff Sierra Club for summary judgment is GRANTED IN PART and DENIED IN PART. The motion of federal defendants for summary judgment is DENIED.

WE ORDER, ADJUDGE and DECREE the seven-year regeneration standard contained in the Bighorn Forest Plan illegal as in violation of the NFMA and its implementing regulations. The seven-year regeneration provisions contained in the Bighorn Forest Plan are SET ASIDE and we hereby REMAND the Bighorn Forest Plan for revision. The Forest Service and feder-

al defendants are DIRECTED to carry out this court's order forthwith to revise and amend the final Bighorn Forest Plan to comply with the NFMA and its implementing regulations by replacing the seven-year regeneration standard with a five-year regeneration standard in all aspects relating to harvest of lodgepole pine. The Forest Service is permanently ENJOINED from removing the five-year standard from the Bighorn Forest Plan.

IT IS FURTHER ORDERED that the Forest Service is hereby permanently ENJOINED from offering any land located on the Bighorn National Forest for harvest unless the Forest Service has first made a determination, based on research and experience, and pursuant to the implementing regulations and three-stage analysis discussed above, that the land is suitable for harvest.

IT IS FURTHER ORDERED the Clerk of the Court is DIRECTED to enter judgment in favor of plaintiff Sierra Club and against federal defendants, each party to bear its costs.

IT IS FURTHER ORDERED the motion of plaintiff for leave of court to file post-hearing memorandum, filed February 1, 1990, is GRANTED. The Clerk of the Court is DIRECTED to file through the memorandum. The court is in receipt of federal defendants' opposition to that motion, filed February 5, 1990.

IT IS FURTHER ORDERED the motion of intervenors to file memorandum regarding issues raised at hearing, filed February 12, 1990, is GRANTED. The Clerk of the Court is DIRECTED to file through the memorandum.

IT IS FURTHER ORDERED that the March 8, 1990 date retained for possible Status Conference is hereby STRICKEN.