_____

No. 95-4253
_____

United States of America,    *
    *
        Appellant,    *
    *
      v.    *
    *
Mercy Health Services; Finley    *
Tri-States Health Group, Inc.,    *
    *
        Appellees.    *
    *
--------------------    *
    *  Appeal from the United States
State of Arkansas; State of    *  District Court for the
Delaware; State of Florida;    *  Northern District of Iowa.
State of Illinois; State of    *
Louisiana; State of Maryland;    *
Commonwealth of Massachusetts;    *
State of Minnesota; State of    *
Missouri; State of New    *
Hampshire; State of New Mexico;    *
State of North Carolina; State    *
of North Dakota; State of Ohio;    *
State of Oregon; Commonwealth    *
of Pennsylvania; State of Rhode    *
Island; State of South Dakota;    *
State of Texas; State of    *
Virginia; State of Washington;    *
State of West Virginia; State    *
of Wisconsin; State of New York;*
American Association of Health    *
Plans; Missouri Managed Health    *
Care Association; California    *
Association of HMOs;    *
Massachusetts Association of    *
HMOs; Oklahoma Association of    *
HMOs; Deere & Company; John    *
Deere Health Care, Inc.;    *
International Union, United    *
Automobile, Aerospace &    *
Agricultural Implement Workers    *
of America; Iowa Managed Care    *
Association; Illinois    *
Association of Health    *
Maintenance Organizations;    *
American Hospital Association;    *

Association of Iowa Hospitals          *
and Health Systems; Barnstead/         *
Thermolyne; Dubuque Bank and           *
Trust; FDL Foods, FDL Foods,           *
Inc.; Flexsteel Industries,            *
Flexsteel Industries                   *
Incorporated; Flynn Ready-Mix;         *
Galena State Bank; Interstate          *
Power Company; The Metrix              *
Company; Molo Companies; Myers-        *
Cox and Portzen Construction,          *
                                       *
          Amici Curiae.                *


          _____


          No. 96-1051
          _____



United States of America,              *
                                       *
          Appellee,                    *
                                       *
     v.                                *
                                       *
Mercy Health Services; Finley          *
Tri-States Health Group, Inc.,         *
                                       *
          Appellants.                  *
                                       *
----------------------                 *
                                       *
State of Texas; State of               *
Virginia; State of Washington;         *
State of West Virginia; State          *
of Wisconsin; State of Arkansas;*
State of Delaware; State of            *
Florida; State of Illinois;            *
State of Louisiana; State of           *
Maryland; Commonwealth of              *
Massachusetts; State of                *
Minnesota; State of Missouri;          *
State of New Hampshire; State          *
of New Mexico; State of North          *
Carolina; State of North Dakota;*
State of Ohio; State of Oregon;        *
Commonwealth of Pennsylvania;          *
State of Rhode Island; State of        *
South Dakota; State of New York;*
American Association of Health         *
Plans; Missouri Managed Health         *

Care Association; California　　　*
Association of HMOs;　　　　　　*
Massachusetts Association of　　*
HMOs; Oklahoma Association of　*
HMOs; Deere & Company; John　*
Deere Health Care, Inc.;　　　　*
International Union, United　　　*
Automobile, Aerospace &　　　　*
Agricultural Implement Workers　*
of America; Iowa Managed Care　*
Association; Illinois　　　　　　*
Association of Health　　　　　*
Maintenance Organizations;　　*
American Hospital Association;　*
Association of Iowa Hospitals　*
and Health Systems; Barnstead/　*
Thermolyne; Dubuque Bank and　*
Trust; FDL Foods; Flexsteel　　*
Industries; Flynn Ready-Mix;　*
Galena State Bank; Interstate　*
Power Company; The Metrix　　*
Company; Molo Companies; Myers-　*
Cox and Portzen Construction,　　*
　　　　　　　　　　　　　　　*
　　　　　Amici Curiae.　　　　*

_____

Submitted:　October 24, 1996

Filed:　February 26, 1997

_____

Before FAGG, ROSS, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

The United States brought this action for injunctive relief under Section 7 of the Clayton Act and Section 1 of the Sherman Act to prevent Mercy Health Services (Mercy) and Finley Tri-States Health Group, Inc. (Finley) from merging. The district court[1] denied the injunction, see United States v. Mercy Health Serv., 902 F. Supp. 968, 989 (N.D. Iowa 1995), and the United States appeals.

_____

[1]The Honorable Michael J. Melloy, United States Chief Judge for the Northern District of Iowa.

Following the submission of this appeal, Finley formally announced its abandonment of the proposed merger. Contrary to the positions of the parties, we conclude that the appeal in this case is moot, and accordingly we vacate the district court's decision and dismiss this appeal.

**I.**

Mercy and Finley operate the only two acute-care hospitals in Dubuque, Iowa, a city of 86,403. While there are several small rural hospitals near Dubuque, the closest comparable hospitals to Mercy and Finley are regional hospitals located between 70 and 100 miles away in Waterloo, Iowa, Cedar Rapids, Iowa, Iowa City, Iowa, Davenport, Iowa, Madison, Wisconsin, and Freeport, Illinois (Regional hospitals).[2]

In 1993, Mercy and Finley began pursuing a partnership which would have merged the two entities into Dubuque Regional Hospital Systems. The United States investigated the proposed merger and filed a complaint on June 10, 1994, seeking to prevent the merger of Mercy and Finley under Section 7 of the Clayton Act, 15 U.S.C. § 18 (1994), and Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1994).

Following a two-week trial, the district court held that the United States had failed to carry its burden of proving that the

---

[2]In 1994 Mercy had approximately 320 staffed beds and an average daily census of 127, while Finley was estimated to have 124 staffed beds and an average daily census of 63. The Regional hospitals, which "generally offer the same or greater range of services as provided by Mercy and Finley," United States v. Mercy Health Serv., 902 F. Supp. 968, 972 (N.D. Iowa 1995), had between 143 and 868 staffed beds and an average daily census of between 70 and 677. By contrast, the rural hospitals, which "mainly provide primary care services and do not provide the breadth of services Mercy and Finley offer," id. at 971, had between 25 and 99 licensed beds and an average daily census of between 3 and 12.4.

merger would have anticompetitive effects and denied the requested injunction. Key to the district court's conclusion was its finding that the United States had not proven that the relevant geographic market did not include the Regional hospitals, a necessary prerequisite to finding anticompetitive effects. See Mercy Health Serv., 902 F. Supp. at 987.[3] The district court also held that if the United States had proven a more limited geographic market, then the court would have rejected Mercy's and Finley's argument that efficiencies stemming from the merger justified any anticompetitive effects. Id. at 989.

On appeal, the United States argues that the district court clearly erred in finding that the United States failed to prove a more limited geographic market. On cross-appeal, Mercy and Finley contend that the district court erred in rejecting their efficiency arguments.

---

[3] In FTC v. Freeman Hosp., 69 F.3d 260 (8th Cir. 1995), this Court described the relevant geographic market for antitrust purposes:

> The determination of the relevant market is a "necessary predicate" to a finding of a Clayton Act violation. Without a well-defined relevant market, an examination of a transaction's competitive effects is without context or meaning. . . .
>
> A relevant market consists of two separate components: a product market and a geographic market. . . . A geographic market is that geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition. In order to meet its burden, the FTC is required to present evidence addressing the critical question of where consumers of acute care inpatient hospital services could practically turn for alternative sources of the product should the Hospitals' merger be consummated and [the] hospital prices become anti-competitive.

Id. at 268 (quotations and citations omitted).

-5-

On January 15, 1997, after this appeal had been submitted to this Court, Finley formally announced that it had abandoned its proposed merger with Mercy. In a press release, Kevin L. Rogols, the president and chief executive officer of Finley, announced Finley's

> decision to withdraw from the Dubuque Regional Health System (DRHS), a planned partnership between Finley and Mercy Health Center, where both hospitals would have shared operating revenues.

Reprinted in Resp. of the United States of America to Letter from the Court Dated January 21, 1997 (Feb. 7, 1997). The release was circulated to the national press, and was reported in the Wall Street Journal. See Two Iowa Hospitals Drop Plan to Merge Operations, Wall St. J., Jan. 21, 1997, at A4. In response to this Court's request for a statement from counsel regarding the nonmerger decision, counsel for Mercy and Finley explained that:

> Though [Mercy and Finley] have dissolved their partnership, the parties desire to have the opportunity to combine some or all of their operations in the future. They are unwilling to commit that they would not do so. . . . A decision that the case was moot would leave an issue unresolved that could be of great importance to the parties in the future.

Defs.' Position Statement Regarding Status of the Case at 2 (Feb. 7, 1997). The United States also asserted that the appeal was not rendered moot by Finley's decision to abandon the merger. See Resp. of the United States of America to Letter from the Court Dated January 21, 1997 at 1.

This Court does not have jurisdiction to hear an appeal in a matter that no longer constitutes a live case or controversy. As the Supreme Court has stated:

> The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. . . . [A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.

Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations and citations omitted). See also Keevan v. Smith, 100 F.3d 644, 647 (8th Cir. 1996) ("A claim is properly dismissed as moot if it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law." (citations and quotations omitted)); Beck v. Missouri State H.S. Activities Ass'n, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) ("During the course of litigation, the issues presented in a case may lose their life because of the passage of time or a change in circumstances. When this happens and a federal court can no longer grant effective relief, the case is moot. Federal courts lack power to decide moot cases." (citations omitted)). We may not consider an appeal, even if all of the parties involved wish us to, if the relief ultimately obtained would be meaningless and the resultant opinion no more than advisory.

Generally, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and

determine the case, <u>i.e.</u>, does not make the case moot."  <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 632 (1953).  This is because

> [a] controversy may remain to be settled in such circumstances, <u>e.g.</u>, a dispute over the legality of the  challenged practices. The defendant is free to return to his old ways.  This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.

<u>Id.</u> (citations and note omitted).  <u>See also</u> <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." (note omitted)).  Thus, where "resumption of the challenged conduct depends solely on the defendants' capricious actions by which they are free to return to their old ways," <u>Steele v. Van Buren Pub. Sch. Dist.</u>, 845 F.2d 1492, 1494 (8th Cir. 1988) (quotations, citations, and alterations omitted), a case is not rendered moot by the defendant's abandonment of allegedly illegal conduct.

A case "may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated. The burden is a heavy one."  <u>W.T. Grant Co.</u>, 345 U.S. at 633 (quotations and note omitted).  <u>See also</u> <u>Gwaltney v. Chesapeake Bay Foundation</u>, 484 U.S. 49, 66 (1987) ("The defendant must demonstrate that it is <u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur." (quotations and citations omitted) (emphasis in original)); <u>Aladdin's Castle</u>, 455 U.S. at 289 n.10 ("The test for mootness in

cases such as this is a stringent one. . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (quotations and citations omitted)).

The parties suggest that this is a case where, despite Finley's decision to abandon the proposed merger, Mercy and Finley are free to "return to [their] old ways." W.T. Grant Co., 345 U.S. at 632 (note omitted). We disagree. The genesis of this case is not any allegedly anticompetitive conduct that Mercy and Finley have actually engaged in, but the alleged threat that their proposed merger posed to competition. There is no illegal conduct for Mercy and Finley to return to, and Mercy and Finley have obviated the threat of illegal conduct by abandoning their proposed merger.

To be sure, Mercy and Finley could, at some time in the future, again decide to merge. But this hypothetical renewed attempt to merge would neither be prevented, nor allowed, by a decision of this Court at this time. If we were to reverse the district court's judgment and direct the imposition of an injunction, we would not be disabling Mercy and Finley from ever again seeking a merger. See Association For Retarded Citizens of North Dakota v. Sinner, 942 F.2d 1235, 1239 (8th Cir. 1991) ("It is well settled that a district court retains authority under Rule 60(b)(5) to modify or terminate a continuing, permanent injunction if the injunction has become illegal or changed circumstances have caused it to operate unjustly."); see also King-Seeley Thermos Co. v. Aladdin Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969) ("While we hold there is power to modify an injunction even in the absence of changed conditions, the power should be sparingly exercised."). Rather, we would be holding that the 1993 merger attempt, which has now been abandoned, would have been anticompetitive. Considering the significant changes experienced by the hospital industry in the recent past and the profound changes likely facing the industry in

the near future, see Mercy Health Serv., 903 F. Supp. at 973-75 (discussing health care market trends), we believe that a merger, deemed anticompetitive today, could be considered procompetitive tomorrow.

Similarly, by affirming the district court's decision that, as of October 27, 1995, the United States had failed to prove that the now-abandoned merger would have had anticompetitive effects, we would not be granting a permanent license to Mercy and Finley to merge whenever they would like, regardless of the passage of time or the change of circumstances. It is beyond argument that a merger which would have been legal in the past may well be anticompetitive in the future; indeed, the district court's denial of injunctive relief was heavily informed by the volatile nature of the hospital industry. See id. Because a favorable decision by this Court would not give Mercy and Finley an eternal license to merge regardless of circumstances, the United States would have the opportunity to investigate the anticompetitive effects of a proposed merger in the future.[4] The United States could then seek injunctive relief to halt this new merger attempt. A district court trying the case would then have to examine the factual circumstances extant at the time of this hypothetical future suit to determine if the new merger would have anticompetitive effects.

We decline to issue a judgment which has no present relevance on the mere chance that it could have some marginal utility in an uncertain future. While we understand that the parties in this case have expended significant resources in this litigation, and

---

[4]Indeed, if the merging entities met certain statutory and regulatory guidelines, they would be required to file with the United States a statement of their intent to merge. See 16 C.F.R. §§ 801-803 (1996) (regulations implementing the Hart-Scott-Rodino Antitrust Improvements Act of 1976). Even if premerger notification was not mandated, the hospitals could request a review of the proposed merger by the United States. See 28 C.F.R. § 50.6 (1996) (Antitrust Division business review procedure).

that each would like a favorable decision from this Court to influence possible future litigation, the parties' mere desire for a ruling does not revive a dead case into a live controversy. Now that the United States has been given all of the relief it has sought by its party opponents' decision to abandon the merger, the United States has no continuing stake in this litigation. In discarding its merger attempt today, Mercy and Finley cannot seek an advisory decision by this Court for their use tomorrow. We conclude, in all of the circumstances, that this case is moot.[5]

### III.

Accordingly, we vacate the district court's decision and remand to the district court with directions to dismiss this case as moot. See United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]We note that the court in R.C. Bigelow, Inc. v. Unilever N.V., 867 F.2d 102 (2d Cir. 1989), came to a contrary conclusion, and held that the abandonment of a proposed merger did not moot a challenge to the merger. Unlike the circumstances in R.C. Bigelow, we do not believe that here the "abandonment of challenged conduct seems timed to head off an adverse determination on the merits." Id. at 106. Indeed, it is apparent that Mercy and Finley would prefer this Court to render a decision on the merits, and that the timing of the decision to abandon the merger during the pendency of the appeal was no more than coincidence.